The judgment of the court was pronounced by
Slidell, J.
Gould was arrested on the 4th February, 1850. He had been twice arrested in previous suits by the same creditors, and the arrests had been set aside. Upon a rule to show cause why the order should not be quashed, the district judge, as on the previous occasions, decided in favor of the defendant; and the plaintiffs have appealed.
The evidence at the trial of the rule was, to the following effect: Gould had been a merchant in Liverpool, in Great Britain, in partnership with O’Connell. In 1849, the partnership was dissolved, having been unsuccessful in its affairs. He arrived here some time in December last, having previously written from Liverpool to a friend here, announcing his intention of coming to New Orleans in the hope of finding employment. Soon after his arrival, he presented a letter of introduction to the British consul, and stated that his object was to obtain employment in some mercantile house, and to remain in New Orleans. Similar statements were made to other acquaintances resident here, accompanied with the expression of his satisfaction with the place, and desire to remain here permanently. He also made enquiries as to the proper steps to be taken to obtain naturalisation. He appears to have been engaged in looking for employment down to the time of his arrest. The plaintiffs, according to the showing of their affidavit, are creditors of O’ Connell and Gould, and are domiciled in New Orleans. No evidence was adduced on their part, they resting their case on the affidavit made by one of the plaintiffs, which is in the usual form, declaring that “ he verily believes that defendant, Gould, is about to depart from the State permanently, without leaving in it sufficient property to satisfy the demand,” &c.
The 212th article of the Code of Practice, as amended by the statute of 28th March, 1840, declares that any creditor whose debtor is about to leave the State permanently, without leaving in it sufficient property to satisfy the judgment which he expects to obtain in the suit he intends to bring against him, may have the person of such debtor arrested, and confined, &c. To obtain the arrest, he must swear that he verily believes that the defendant is about to depart from the State permanently, &c. Although it is sufficient to obtain the order of arrest, that the creditor should swear that he verily believes that his debtor is about to depart from the State permanently, yet, it is obvious, that the maintenance of the arrest does not depend upon the mere belief of the creditor at the time of taking the oath, however sincere. It depends upon the question, whether the defendant was about to depart from the State permanently; for that is the case in which the right of arrest is accorded. The view, therefore, of the district judge was substantially correct. The creditor is permitted to obtain the arrest on swearing that he verily believes that the defendant is about so to depart, and the affidavit stands as prima facie evidence to sustain the arrest; but upon a rule to show cause, the enquiry is, was the debtor, at the date of the order, about- to leave the State permanently ? If the debtor can overthrow the prima facie showing by proper evidence, then no matter how *355 sincere was the creditor’s belief, the order should be quashed, and the defendant restored to his liberty.
As to the right to take a rule to show cause, there is no question. It is every day’s practice, and nothing can be more obvious than the justice of speedily determining whether the creditor’s belief is consistent with the true state of the case.
Now, the question whether Gould was about to depart from the State of Louisiana permanently, is a question of intention. He was at the time in the State. Did he intend to leave it ? The district judge could not look into the breast of the debtor; he could only ascertain whether such an intention existed by the aid of outward facts and circumstances, Was it admissible for Gould to show his own acts and declarations anterior to the arrest, under circumstances not suspicious, and while he was ignorant that an arrest was contemplated? This is, in reality, the only question in this case which admits of serious discussion ; and it is one which we should dispose of without discussion, were it not for the deference we entertain for the opinions of the learned judge who delivered the decision in Robitailles case, 4 L. R. 226. All considerations of evidence must be pursued with reference to the subject matter to which it is to be applied ; and to weigh the competency or sufficiency of evidence in any given case, it is requisite to discern, with accuracy, the nature of the proposition which it is offered to establish. Evans’s Pothier, Appendix No. 16, sec. 11, p. 216.
If, in order to ascertain the intentions of a party, we are not permitted to look at his conduct, to what other source of information can we resort with safety ? Are we to say that extraneous facts and circumstances are to give us the sole key to his thoughts and intentions ? In some cases they might assist us. In others they would be utterly useless in the search for truth. Now, it is quite true, as a general rule, that a man is not permitted to make evidence for himself. But the principle of this rule is not violated in that large class of exceptions where the act or declaration of the party was not done or made for the purpose of being afterwards used as evidence, and where better or higher evidence, pertinent to the subject of enquiry, is not to be attained in the ordinary course of the affairs of .men. Where, for example, a court is investigating .a question of domicil, what is more common than to hear testimony as to the circumstances surrounding an individual when he came to a certain place, what he said respecting his intentions to reside, and what he did when he came there and afterwards ?
In Thorndike v. City of Boston, 1 Metcalf, 242, the action involved the question, whether the plaintiff, who had left the country with his family, was liable afterwards to be taxed as an inhabitant of the place of his former residence. A letter from him to his agent at that place, expressing his intention to reside abroad permanently was held admissible in evidence, it being written before he knew that a tax had been assessed upon him, though written after the assessment. It was written, says Chief Justice Shaw, before any controversy, and before he had any interest to make evidence for himself on the subject. So in 3 Metcalf, 201, Kilburn, Tax Collector for the Town of Groton v. Bennett, to recover a tax assessed upon defendant for the year 1839, the principal question submitted to the appellate court was, whether the evidence offered by the defendant at the trial was rightly rejected. To establish the fact that the defendant was not an inhabitant of Groton on the 1st May, 1839, he proved that on the 27th April of that year, he went to Tyngsborough, to the house *356 of his brother, where he remained some days after the 1st May ; and for the purpose of showing with what intent he removed to Tyngsborough, he offered to prove that about three weelcs before his removal he told a person, in whose house he resided, that he should leave Groton before the 1st of May, and move with his family to Tyngsborough, to reside with his brother, and make his house a home until he went to Illinois. The court below held that, this being the mere declaration of the defendant, was not competent evidence in his favor, and it was rejected. Shaw, Chief Justice, observed, the general rule undoubtedly is, that a party cannot give in evidence his own declarations in his favour, unless they accompany some act, and are a part of the res gesta. But, it appears to us, that the declarations offered to be proved are within the qualification of the rule. They were made in the ordinary course of business, and in relation to the defendant’s removal; and they were made to the owner of the house in which he was at the time residing. This giving notice of his intended removal, is to be considered an act, which he might prove in any case in which it became material; and if so, all that he said explanatory of his intention in relation to his removal, seems to us to be admissible in evidence.
When important questions of property have, turned upon the questions of the intention existing in the mind of a party, for example, whether a married woman’s property was paraphernal, testimony has been repeatedly received, to show what the party said and did at a former time, and third persons have been subsequently concluded by such acts and declarations. See Routh’s case, 9th R. R. 226. Hayden v. Nutt, 4th Ann., Martin v. Ford.
In Robetaille’s case, the court made no objection to evidence of what he did when he came to the State. His acts were considered in investigating the question of his intentions. But why exclude his declarations ? Both emanated from him. His declaration to a friend in Natchez before he came to New Orleans, that he intended to remove to New Orleans, and do business there, was, in the language of Mr. Greenleaf, “ a verbal act,” indicating a present purpose and intention, and the motive of his conduct. So here, the declaration of Gould that he intended to make his future home in New Orleans is as much an act by him as his crossing the ocean to come to New Orleans, his taking lodgings hero, his presenting his letters of recommendation, his applying to various mercantile houses for employment. Some acts, using the term in its stricter sense, may be more weighty and convincing than declarations ; but to say that the latter are unavailing, when made at a time not suspicious, and harmonising with other contemporaneous conduct, seems to us inconsistent with the authorities in the books and with sound principles of the law of evidence. See Greenleaf on Evidence, § 108.
What then was the intention of Gould at the time when his creditor arrested him ? The reasonable answer is, his purpose was to remain in New Orleans if he could get a livelihood here. For that purpose he left his native country; and in that purpose he still continued after his arrival, and down to the time of his arrest, when he was interrupted in his pursuit of it, by incarceration. The district judge very pithily said, “I ask what brought this man from England to the very domicil of his creditor ? The answer I am called on to make is, he came here to run away from him. The state of the case has made a different impression upon my mind. I see his ability to do it, but I cannot see the intention.”
It was said at bar, the defendant came here to seek employment, he has not succeeded yet, and if he does not succeed, he must go elsewhere to earn his *357 bread. This may be. But the chance that, upon the happening of a contin- Gardner gency yet unascertained, the defendant may leave the State permanently, does 0’jConnei.l. not authorise us to infer the existence of a present purpose to do so.
The judgment of the district court is therefore affirmed, with costs.